# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

PRAVEEN KHARB §
§ Civil Action No. 4:17-CV-619
v. § (Judge Mazzant/Judge Nowak)
§
ERICSSON, INC., ET AL. §
§

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On November 5, 2018, the report of the Magistrate Judge (Dkt. #70) was entered containing proposed findings of fact and recommendations that Defendants' Motion to Dismiss (Dkt. #57) be granted. Having received the report of the Magistrate Judge, having considered Plaintiff's Objections (Dkt. #74), Defendants' Response (Dkt. #77), and having conducted a de novo review, the Court is of the opinion that the Magistrate Judge's report should be adopted.

### RELEVANT BACKGROUND

The underlying facts of this case have been set forth previously; as such, the Court sets forth only those facts pertinent to Plaintiff's objections.

Plaintiff filed suit in the Western District of Wisconsin on May 15, 2017, against Defendants Ericsson, Inc. and seven John Does (Dkt. #1). The Wisconsin court granted Plaintiff's request to proceed *in forma pauperis* and subsequently determined on September 5, 2017 that Plaintiff's case should be transferred to the Eastern District of Texas, where Defendant Ericcson is headquartered (Dkts. #5; #17). On March 22, 2018, Plaintiff filed his Third Amended Complaint, the live pleading, naming Ericcson, Inc., Niklas Heuveldop, Jennifer Hulett, Thomas

Nilsson, and John Doe, Account Manager, C.W. (Dkt. #48). Plaintiff was subsequently permitted to substitute Thomas Lubeskie for "John Doe, Account Manager" (Dkt. #58).

Plaintiff states in his Third Amended Complaint that "[t]his is a civil action. . . due to Defendants' willful violation of the Fair Labor Standards Act [("FLSA")], 29 U.S.C. § 207 (maximum hours); Racketeer Influenced and Corrupt Organizations Act [("RICO")], 18 U.S.C. § 1962(c) through fraud in foreign labor contracting, 18 U.S.C. § 1351(a); and unjust enrichment under Texas State common law" (Dkt. #48 at p. 1). Plaintiff's Third Amended Complaint asserts that Plaintiff was a telecommunications engineer in India, employed by Ericsson LM's Indian Subsidiary, Ericsson India Global Services Pvt. Ltd ("Ericsson India"). "In January 2014. . . Plaintiff was assigned the role of a project manager. . . and was required to work onsite on [Defendant Lubeskie's] premises in San Diego, CA. . . . .On January 19, 2014, Plaintiff travelled to [the] United States as a non-immigrant alien on a B-1/B-2 visa. . . .The said project terminated prematurely and Plaintiff returned to India" (Dkt. #48 at pp. 4–5). The following week, "Defendant Nilsson sought to engage Plaintiff on Ericsson's project for its client TMO, in Bellevue, WA. . . .Plaintiff once again travelled to [the] United States on March 31, 2014. . . .Plaintiff was eventually admitted on the B-1 visa on his passport" (Dkt. #48 at p. 5). Plaintiff asserts that during both projects, he "was not paid any wages by Defendants. For the work, Plaintiff was paid a fix monthly compensation, for a fixed number of hours back in India, that equated to roughly $10 per hour. However, Plaintiff's full-time engagement on these projects was billed by Ericsson to its business clients in excess of $200 per hour. Work hours routinely exceeded 40 hours per week, but Plaintiff was not paid overtime for the extra hours he worked, because the number of hours to be logged were fixed" (Dkt. #48 at p. 5). "On May 8, 2014, during

the period that Plaintiff worked for [Ericsson] in Belleevue [sic], WA, Plaintiff was arrested for criminal conduct in an unrelated matter, and has been incarcerated ever since" (Dkt. #48 at p. 6).

On April 16, 2018, Defendants filed their Motion to Dismiss (Dkt. #57); on May 11, 2018, Plaintiff responded (Dkt. #59); on May 18, 2018, Defendants replied (Dkt. #60). Additional briefing on the Motion was filed on June 5, 2018(Dkt. #61), on June 18, 2018 (Dkt. #63), July 3, 2018 (Dkt. #65), July 17, 2018 (Dkt. #66), and on August 3, 2018 (Dkts. #67; #69). On November 5, 2018, the Magistrate Judge entered a report and recommendation, recommending that Defendants' Motion to Dismiss (Dkt. #57) be granted (Dkt. #70). On November 27, 2018, the Court granted Plaintiff's request for an extension of time to file objections, extending the deadline to object to December 7, 2018 (Dkt. #73). On December 7, 2018, Plaintiff filed his Objections to the United States Magistrate Judge's Report and Recommendation (Dkt. #74). On December 21, 2018, Defendant filed its Response to Plaintiff's Objections (Dkt. #77).

**OBJECTIONS TO REPORT AND RECOMMENDATION**

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3).

The Report and Recommendation recommended that Defendants' Motion to Dismiss be granted. Specifically, the Report found that: (1) Plaintiff's allegations are insufficient to subject Defendant Nilsson to personal jurisdiction in Texas; (2) Plaintiff's claims are barred under the FLSA's two-year statute of limitations; (3) Plaintiff's allegations do not demonstrate that Defendants willfully violated the FLSA, and therefore, the three-year statute of limitations is inapplicable; (4) Plaintiff has not shown he is entitled to equitable tolling on his FLSA claim; (5) Plaintiff's unjust enrichment claim is duplicative of Plaintiff's FLSA claim; (6) Plaintiff's

3

RICO claim is duplicative of his FLSA allegations; and (7) Plaintiff has failed to establish any predicate criminal conduct and/or meet the heightened pleading standard required for fraud allegations under RICO.

Plaintiff raises nine objections to these findings: (1) Defendant Nilsson is subject to personal jurisdiction in Texas because he hired Plaintiff for a project through Defendant Ericsson who is headquartered in Plano, Texas; (2) Plaintiff's statement that "[t]his is a civil action for damages due to Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (maximum hours)," is sufficient at this stage to plead willfulness and alternatively, Plaintiff's allegations otherwise support an inference of willfulness; (3) the Court failed to apply the prison mailbox rule to the filing of Plaintiff's original complaint; (4) the Court may not determine whether equitable tolling is applicable to the FLSA claim until after discovery is conducted; (5) alternatively, Plaintiff's allegations regarding diligence establish equitable tolling; (6) if he is entitled to equitable tolling, then Plaintiff should be entitled to the full limitations period beginning on the date he had access to the prison law library; (7) Plaintiff's unjust enrichment claim is based on his allegations that he should have been paid more for his services (not that he was not paid for his overtime hours), and therefore, is not preempted by the FLSA; (8) the FLSA does not preempt RICO; and (9) Plaintiff's allegations are sufficient at this stage to establish his RICO claim.

Importantly, Plaintiff does not object to, nor does he disagree with the Report's finding, that if the three-year limitations period and/or equitable tolling is inapplicable to the instant case, his claims are barred under the FLSA's two-year statute of limitations.

*Personal Jurisdiction Over Defendant Nilsson*

Plaintiff objects that the Report incorrectly concluded that the Court may not exercise personal jurisdiction over Defendant Nilsson. Specifically, Plaintiff contends "that since all core

dealings with relation to hiring Plaintiff for Nilsson's project were channeled through Ericsson, Inc. in Plano, Texas, this court can exercise personal jurisdiction over defendant Nilsson" (Dkt. #74 at p. 2). Defendants respond that "it would be contrary to due process and matters of fundamental fairness for Nilsson to be subject to personal jurisdiction in Texas because he works for an entity headquartered in Texas" (Dkt. #77 at p. 2). The Report found that:

> The majority, if not all, of the actions Plaintiff attributes to Defendant Nilsson took place in Washington (i.e., Plaintiff was allegedly hired in Washington to complete work in Washington, which would be supervised by Defendant Nilsson based in Washington). The only connection Plaintiff draws between Defendant Nilsson and the State of Texas is the bare fact that Ericsson, Defendant Nilsson's employer, is headquartered in Plano, Texas and that Defendant Nilsson has substantial contacts and obligations with and/or to his employer.

(Dkt. #70 at p. 7). Plaintiff's Objections do not raise any different or additional factual allegations or cite any contrary authority. Indeed, Plaintiff's Objections acknowledge that Defendant Nilsson offices in the State of Washington and himself took no actions in Texas, and the project for which Plaintiff was hired took place entirely in Washington. Once again, the only connection Plaintiff alleges between Defendant Nilsson and Texas is Defendant Ericsson's presence in Texas, which, standing alone, is insufficient to subject Defendant Nilsson to the Court's exercise of personal jurisdiction. *See Devries v. Bulldog Well Testing LLC*, 7:16-CV-00338, 2017 WL 1134318, at *4 (S.D. Tex. Mar. 27, 2017); *Skidmore Energy, Inc. v. KPMG*, CIV.A.3:03-CV-2138-B, 2004 WL 2008514, at *7 (N.D. Tex. Sept. 3, 2004). Plaintiff's objection is overruled.

*Willfulness*

Regarding the Report's finding that Plaintiff's Amended Complaint failed to demonstrate his FLSA claim was willful and therefore, entitled to the three-year limitations period, Plaintiff contends that:

5

> Plaintiff has alleged in the Third Amended Complaint – "This is a civil action for damages due to Defendants' **willful** violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (maximum hours)." Plaintiff did not make other definitive statements such as the Court highlights (above) regarding Defendants' willfulness. However, Plaintiff does not believe that Plaintiff should be required to plead all related facts in the complaint.

(Dkt. #74 at p. 3) (emphasis in original). Plaintiff continues that "FLSA plaintiffs are not required to prove willfulness prior to discovery," citing *Rice v. Interactive Learning Sys., Inc.*, 3:07-CV-0725-G, 2007 WL 2325202, at *2 (N.D. Tex. Aug. 10, 2007), *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462 (S.D. Tex. 2012) and *Craven v. Excel Staffing Serv., Inc.*, CIV.A. H-12-2860, 2014 WL 345682, at *1 (S.D. Tex. Jan. 30, 2014) in support (Dkt. #74 at p. 4).

Plaintiff is mistaken. *Walker* and *Craven* are both readily distinguishable from the case at bar; both cases, out of the Southern District of Texas, discuss the allegations needed at the notice stage to conditionally certify a class under the FLSA, i.e. whether the collective action will contain workers from the previous two or three-year period. *See Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 472 (S.D. Tex. 2012) ("[t]he well-established precedent of the Southern District of Texas indicates that, where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period; FLSA plaintiffs are not required to prove willfulness prior to discovery."); *Craven v. Excel Staffing Serv., Inc.*, CIV.A. H-12-2860, 2014 WL 345682, at *8 (S.D. Tex. Jan. 30, 2014) (same). Here, Plaintiff does not seek to certify a class. Rather the Court analyzes only whether Plaintiff himself has raised sufficient allegations to establish willfulness. *Walker* and *Craven* quite simply address different factual circumstances and different stages of litigation than those presented by the instant case.

Plaintiff also cites *Rice v. Interactive Learning Sys., Inc.*, 3:07-CV-0725-G, 2007 WL 2325202, at *2 (N.D. Tex. Aug. 10, 2007) as support for his contention that he "should [not] be required to plead all related facts in the complaint" (Dkt. #74 at p. 3). Defendants respond that

this case is also distinguishable because "[n]ot only did it not apply the *Twombly/Iqbal* standards, but in *Rice*, unlike here, the plaintiff did not allege the dates of the alleged violations, which made it impossible to tell from the face of the Complaint whether suit was timely. Here, Plaintiff expressly pleaded the relevant dates, which confirm the Complaint's untimeliness" (Dkt. #77 at p. 3). Indeed, in *Rice*, the court held that "[w]hile the court can consider a statute of limitations argument on a Rule 12(b)(6) motion to dismiss, such motion cannot be granted unless the limitations defense is clear on the face of the complaint. . . .Because the limitations defense is not clear on the face of the complaint, the motion to dismiss is denied." 2007 WL 2325202, at *2. In the instant case, Plaintiff's allegations related to the relevant dates establish his FLSA claims are time-barred.

Thus, contrary to Plaintiff's contention, allegations of willfulness under the FLSA are subject to Rule 12(b)(6) motions; and mere allegations that an employer acted willfully without any additional information are inadequate. *Irvin v. Masters Advanced Remediation Servs., Inc.*, No. H-16-2488, 2016 WL 7406750, at *3 (S.D. Tex. 2016) ("Irvin has not pleaded any facts that give rise to an inference of, or show, a willful violation of the FLSA. He merely states that Masters Advanced Remediation acted willfully.")).

Plaintiff alternatively argues that even if the use of the term "willful" is not enough he has presented enough facts for the Court to infer Defendants' willful violations of the FLSA. Plaintiff contends, in his Objections, that these facts are that: (1) "Defendants' letters detailing [Plaintiff's] engagement on Defendants' clients' projects do not carry wage-hour specifics, although these letters were signed by Defendant's legal counsel; (2) Defendants failed to keep any personnel records of Plaintiff's engagement on their clients' projects; and (3) "since the prearrangement that Defendants made for compensating Plaintiff for his work as for a fixed number of hours only; any

7

number of hours worked beyond this fixed number were ignored (and not paid for)" (Dkt. #74 at pp. 4–5).

These allegations are not contained in Plaintiff's live pleading. As Plaintiff avers (Dkt. #74 at p. 3), the only related allegation contained in the live complaint is "[t]his is a civil action for damages due to Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (maximum hours)." Plaintiff did not make any other statements, such as he now advances in his Objections, regarding Defendants' "willfulness" (Dkt. #74 at p. 3). Raising such allegations in his Objections is improper. *Stephenson v. Caterpillar Inc.*, 216CV00071JRGRSP, 2018 WL 6589981, at *1 (E.D. Tex. Dec. 14, 2018); *Warren v. Astrue*, 6:09-CV-417, 2011 WL 3444268, at *3 (E.D. Tex. Aug. 5, 2011) ("these arguments. . . [were] first argued in his objections to the Magistrate Judge's Report and Recommendation. Therefore, these issues were not properly raised before this Court and will not be considered."). Plaintiff has been afforded at least three opportunities to amend his pleadings and state his best claim (Dkts. #6; #15; #48).

Even so, these allegations do not lend to the inference that Defendants willfully or knowingly violated the FLSA. Plaintiff's objection is overruled.

*Equitable Tolling*

Plaintiff next contends that the Report incorrectly found he was not entitled to equitable tolling because:

> No reasonably prudent person similarly situated (a foreigner who has never lived or worked in the United States, who has been here for less than four months, who's [sic] employer has not apprised him of his rights under the FLSA, who has thereafter been confined to a small jail as a pre-trial detainee for over eighteen months, where the detention facility lacked a law library (the question being of availability as against accessibility of legal materials), who has never had any interaction with the civil or criminal justice system before, who has never been part of any litigation, who is indigent and without help) could have possibly learnt of facts bearing on the existence of his claim.

(Dkt. #74 at p. 7). Plaintiff asserts that he was diligent in pursuing his rights because he "tried to resolve this matter prior to filing this suit and sought assistance from U.S. Department of Labor" and "when legal materials did become available he researched the relevant laws, [Plaintiff] made diligent efforts to learn of his claims, filed a formal complaint with the U.S. Department of Labor, and upon receipt of the right-to-sue letter from the Dept, of Labor (in the third week of April 2017), filed this suit within the next two weeks (on May 01, 2017)" (Dkt. #74 at p. 9).

Defendants respond that "a plaintiff's unfamiliarity with the legal process, ignorance of the law, [and] lack of representation during the applicable filing period" do not merit equitable tolling. Defendants also point out that "nothing changed in terms of Plaintiff's pay during his time providing services to Ericsson from. . . January 19, 2014 until his criminal misconduct and arrest on May 8, 2014 . . . .Plaintiff was free to investigate, research, go to a law library, or travel to the local Department of Labor office," and therefore, "[p]ointing to his incarceration for a crime he pled guilty to fails to recognize that nothing prevented him from investigating his rights for many months before being incarcerated" (Dkt. #77 at pp. 4–5).

With respect to the issue of equitable tolling, the Report found that:

> Plaintiff's allegations fail to establish exceptional circumstances worthy of equitable tolling in the instant case. *See Boswell v. Claiborne Par. Det. Ctr.*, 14-31250, 2015 WL 6161810 (5th Cir. Oct. 21, 2015) ("Boswell's contentions that he is entitled to equitable tolling of the limitations period because he 'had no knowledge of the civil law,' was given incorrect legal advice by a 'prison inmate counsel,' and lacked access to the prison law library while in administrative segregation are unavailing."); *see also Felder v. Johnson,* 204 F.3d 168, 171–72 (5th Cir. 2000) (holding that ignorance of the law, temporary denial of access to legal materials, lack of knowledge of filing deadlines, and inadequacies of a prison law library are insufficient to warrant equitable tolling).
>
> ***
>
> Notably, Plaintiff does not contend that Defendants misled or otherwise prevented him from asserting his FLSA claim in a timely manner. Further, although Plaintiff fails to factually support his conclusory remark that he diligently pursued his rights, he fails to explain why he did not file the instant lawsuit, filed May 15, 2017, until

9

well over a year after admittedly having access to the prison law library, March 1, 2016.

(Dkt. #70 at pp. 14–15).

"The decision to allow equitable tolling of the statute of limitations rests in the discretion of the district court." *Bingham v. Jefferson County*, 1:11-CV-48, 2011 WL 13089001, at *3 (E.D. Tex. Aug. 12, 2011). Plaintiff, as the party invoking equitable tolling, bears the burden of proof. *Id*. "This is a heavy burden, as 'it is well established that equitable tolling must be strictly construed.'" *Id*. (quoting *Lange v. United States*, 79 Fed. Cl. 628, 632 (2007)).[1]

As the Report found, Plaintiff's allegations fail to establish either that Defendants misled or prevented Plaintiff from filing his claim or that exceptional circumstances justify the imposition of equitable tolling in this matter. *See Mahmood v. Gonzales*, 427 F.3d 248, 253 (3d Cir. 2005) (plaintiff's status as a foreigner did not entitle plaintiff to equitable tolling); *Boswell v. Claiborne Par. Det. Ctr.*, 14-31250, 2015 WL 6161810 (5th Cir. Oct. 21, 2015) ("Boswell's contentions that he is entitled to equitable tolling of the limitations period because he 'had no knowledge of the civil law,' was given incorrect legal advice by a 'prison inmate counsel,' and lacked access to the prison law library while in administrative segregation are unavailing."); *see also Felder v. Johnson,* 204 F.3d 168, 171–72 (5th Cir. 2000) (holding that ignorance of the law, temporary denial of access to legal materials, lack of knowledge of filing deadlines, and inadequacies of a prison law library are insufficient to warrant equitable tolling).[2]

---

[1] Insofar as Plaintiff argues that equitable tolling should not be considered at the motion to dismiss stage, his objection is overruled.

[2] Plaintiff asserts that the Report cited cases that are distinguishable from his circumstances, primarily because "Plaintiff's access to legal materials was not curtailed by his segregation status or a temporary denial of access or an inadequate prison library, as was the case in the cases cited by the Court, but because a law library did not exist in the small jail (availability of two dozen Wisconsin State Statute volumes to jail inmates does not constitute a law library by any standards) where Plaintiff was confined as a pretrial detainee for the initial 18 months" (Dkt. #74 at p. 8). The distinctions drawn by Plaintiff between his circumstances and the cases cited in the Report are irrelevant; in the present case, denial of Plaintiff's access to a law library does not constitute exceptional circumstances given Plaintiff's failure to file suit a year after gaining access to a "suitable" law library.

To begin with, Plaintiff averred in his Response to the Motion to Dismiss that he had "access to a prison law library and was able to read and research federal immigration and labor laws" as early as March 1, 2016 (Dkt. #59 at p. 10). Plaintiff filed his suit in May 2017, well over a year after his acknowledged access to a law library and ability to familiarize himself with his claims.

Plaintiff attempts to shift the burden of proving equitable tolling to Defendants, arguing that Defendants have not presented facts to show that Plaintiff had knowledge of his rights or claims and also that the one-year lapse between his access to the law library and the filing of his complaint is due to attempts to resolve the matter informally prior to filing suit and also time spent waiting for a "right to sue" letter from the Department of Labor. These allegations also do not demonstrate that limitations should be tolled. Plaintiff's objection is overruled.[3]

*Prison Mailbox Rule*

Plaintiff claims that his complaint should be considered filed as of May 1, 2017. The record demonstrates Plaintiff's complaint was mailed on May 10, 2017 and was filed on May 15, 2017 (Dkts. #1; #1-3). One of Plaintiff's objections focuses on the applicability of the Prison Mailbox Rule, thereby making Plaintiff's filing date to be May 1, 2017. A filing date of May 1, 2017 as compared to May 15, 2017 does not alter and has no impact on the Court's analysis regarding the application of equitable tolling. Plaintiff's Objection is overruled.

*Unjust Enrichment*

Plaintiff objects that his unjust enrichment claim is not preempted by the FLSA; specifically, Plaintiff contends that:

---

[3] Because Plaintiff is not entitled to equitable tolling, the Court does not reach Plaintiff's argument that if entitled to equitable tolling, he is entitled to the full limitations period beginning on the date he received access to an adequate prison law library (Dkt. #74 at p. 11).

11

> Plaintiff's FLSA claim is grounded solely on the non-payment of overtime pay. The FLSA minimum wage is an uncontested issue that Plaintiff has not raised. On the other hand, Plaintiff's state common-law claim for unjust enrichment [Count III] is premised on the unjust retention of benefits by Defendants at Plaintiff's expense, by paying Plaintiff a depressed wage of $10 per hour, while earning huge profits by billing their clients in excess of $200 per hour for Plaintiff's work.

(Dkt. #74 at p. 12). Defendants respond that "[b]oth Plaintiff's FLSA claim and his claim for unjust enrichment are premised on the same set of operative facts – that Ericsson failed to pay him at a rate required by applicable law. . . .The FLSA's purpose is to protect employees from receiving substandard wages and to punish employers for failing to appropriately pay their workers. This is precisely the basis for Plaintiff's unjust enrichment claim" (Dkt. #77 at pp. 5–6). Defendant continues that "[e]ven assuming Plaintiff's theory of liability were not preempted by the FLSA, the claim still fails under Rule 12(b)(6)" because "[t]here is nothing nefarious about paying contractors a certain rate – which, is above the FLSA's minimum wage – while charging clients a higher rate" (Dkt. #77 at p. 6).

The Report found that "the FLSA provides the exclusive remedy for an alleged violation of a wage-hour matter and pre-empts Plaintiff's FLSA-based state law claims. . . .Plaintiff's claim[] for. . . unjust enrichment. . . should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)." (Dkt. #70 at p. 16) (quoting *Guerrero v. JPMorgan Chase & Co.*, 6:09CV388, 2010 WL 457144, at *4 (E.D. Tex. Feb. 5, 2010)).

"District courts in this circuit. . . have concluded that state-law claims are preempted by the FLSA to the extent the state-law claim is predicated on an alleged violation of the FLSA." *Wiatrek v. Flowers Foods, Inc.*, SA-17-CA-772-XR, 2018 WL 3040583, at *6 (W.D. Tex. June 16, 2018). "[T]he FLSA does not explicitly authorize states to create alternative remedies for FLSA violations." *Botello v. COI Telecom, LLC*, SA10CV305XR, 2010 WL 3784202, at *3–4 (W.D. Tex. Sept. 21, 2010) (quoting *Guerrero*, 2010 WL 457144, at *4 (quoting *Anderson v. Sara Lee*

12

*Corporation,* 508 F.3d 181 (4th Cir. 2007))). As a result, a plaintiff cannot circumvent the FLSA's purpose as prescribed by Congress by asserting corresponding state law claims in addition to his FLSA claim. *See id.* Accordingly, insofar as Plaintiff seeks relief from Defendants for unpaid minimum wages via his unjust enrichment claims, such claim is preempted by the FLSA.

Even if the Court found Plaintiff's unjust enrichment claim was not preempted by the FLSA, Plaintiff's allegations that he should have been provided higher wages in light of Defendant Ericsson's profits on his work, fail to state a claim. "In Texas, a plaintiff may recover under an unjust enrichment theory when the defendant 'has obtained a benefit. . . by fraud, duress, or the taking of an undue advantage.'" *VocalSpace, LLC v. Lorenso,* 4:09-CV-350, 2010 WL 11527374, at *7 (E.D. Tex. Jan. 29, 2010) (quoting *Eagle Metal Prods., LLC v. Keymark Enters., LLC*, 651 F. Supp. 2d 577, 591 (N.D. Tex. 2009) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41–42 (Tex. 1992))). Plaintiff's Amended Complaint avers that Defendants were unjustly enriched as a result of their purported violation of 18 U.S.C. § 1351(a) for fraud in foreign labor contracting (Dkt. #48 at pp. 8–9). As discussed *infra*, Plaintiff fails to sufficiently allege any such violation or otherwise assert any fraudulent conduct. Consequently, Plaintiff fails to state a claim for unjust enrichment; Plaintiff's objection is overruled.

***RICO***

Plaintiff contends that his Amended Complaint clearly "sets out the time, place, contents of misrepresentation, the identity of the person making the misrepresentation, and what they obtained thereby," and therefore, he has adequately alleged a predicate criminal conduct and met the heightened pleading requirement necessary to state his RICO claim (Dkt. #74 at p. 17). Specifically, Plaintiff avers that even though he entered the United States lawfully, "Defendants knowingly employing an unauthorized alien (i.e, an alien without work authorization) on their

projects for financial gain, based on the pretense that such employment was not unlawful and satisfactory performance would lead to future prospects" (Dkt. #74 at p. 20).

Defendants counter that "Plaintiff worked for Ericsson India; he was offered a project in the United States (which he accepted); Ericsson provided correspondence to United States Customs and Border Protection that was entirely truthful and accurate; Plaintiff was authorized to work for Ericsson; and Plaintiff's assignment was cut short by his own criminal conduct causing him to be incarcerated," and therefore, the record does not demonstrate that Defendants violated "[s]ection 1351(a) [which] governs fraud in foreign labor contracting and provides that it is unlawful to 'knowingly and with intent to defraud' recruit and hire someone outside the United States by means of materially false or fraudulent pretenses, representations, or promises" (Dkt. #77 at p. 8). The Report noted:

> Plaintiff's allegations fail to demonstrate that Defendants acted unlawfully and/or with fraudulent intent. On March 26, 2014, Defendant Ericsson sent a letter in support of Plaintiff's "admission to the United States in the classification of a B-1 visa in lieu of an H1-B, which would permit him to undertake business activities in the United States for a temporary term not to exceed six months." This letter describes the nature of Defendant Ericsson's business, Plaintiff's then-employment, the tasks Plaintiff would be tasked with while working for Ericsson in the United States, and that Plaintiff would remain on his Indian employer's payroll while working in the United States. Based on Defendant Ericsson's letter, Defendant alleges Plaintiff was admitted to work in the United States with a B-1 visa. Plaintiff fails to explain why the information provided to U.S. Customs and Border Protection is false, fraudulent, or misleading, much less establish that Defendant Ericsson provided such allegedly false information to U.S. Customs with the intent to defraud. Notably, the Court finds that Plaintiff's explanation of his work duties in pleading his FLSA claim align with Ericsson's description of his work duties in the letter provided to U.S. Customs. Plaintiff has failed to provide sufficient allegations that Defendants violated § 1351 (or § 1546), and therefore, Plaintiff has failed to establish a requisite predicate act; Plaintiff's RICO claim should be dismissed.

(Dkt. #70 at pp. 21–22).

Regarding his RICO claim, Plaintiff's Amended Complaint alleges that Defendants "engaged in the violation of 18 U.S.C. § 1351(a) by hiring Plaintiff outside of the United States, through Ericsson India, knowing that Plaintiff would be an alien unauthorized to work in the United States, with a false pretense that a satisfactory performance on such engagement would provide job security and prospective entitlement to a work visa and higher wages," thereby "profiting [Defendant] through engagement of unauthorized skilled foreign labor at below market rates" (Dkt. #48 at p. 8). Plaintiff explained in his Sur-Reply to Defendants' Motion to Dismiss that he was an unauthorized alien because his B-1 business visa did not authorize the work Plaintiff performed (Dkt. #65 at p. 2).

"Whoever knowingly and with intent to defraud recruits, solicits, or hires a person outside the United States or causes another person to recruit, solicit, or hire a person outside the United States, or attempts to do so, for purposes of employment in the United States by means of materially false or fraudulent pretenses, representations or promises regarding that employment." 18 U.S.C. § 1351(a). As the Report found, Plaintiff's allegations fail to demonstrate that Defendants violated § 1351 by committing fraud in foreign labor contracting; indeed, as Defendants contend, "Plaintiff's RICO theory makes little sense considering there is no dispute that he was lawfully working in the United States when he was arrested" (Dkt. #77 at p. 8).

Plaintiff states in his Objections that he was lawfully admitted into the United States, yet he fails to demonstrate why he was unauthorized to perform the tasks he was hired to complete by Defendant Ericsson (Dkt. #74 at p. 20). Plaintiff does not dispute that he was provided with a B-1 Temporary Business Visitor visa, which permitted him to "participat[e] in business activities of a commercial or professional nature in the United States" (Dkt. #48 at p. 3) ("Plaintiff travelled to United States as a non-immigrant alien on a B-1/B-2 visa"). *See also* U.S. DEP'T OF

HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, "B-1 Temporary Business Visitor," (last updated July 14, 2015), https://www.uscis.gov/working-united-states/temporary-visitors-business/b-1-temporary-business-visitor (last visited January 18, 2019). Furthermore, based on Plaintiff's description of his duties ("[Plaintiff] worked as a project manager and systems engineer on Ericsson's projects for its clients C.W." (Dkt. #48 at p. 3)), it is unclear how Plaintiff was unauthorized to perform such tasks, much less how Defendants' sponsorship of Plaintiff's visa in light of his duties was somehow fraudulent. Furthermore, as the Report noted, Plaintiff's explanation of his work duties in his Amended Complaint match the description of Plaintiff's work duties in the letter provided to U.S. Customs for Plaintiff's entry into the United States (*compare* Dkts. #48 at pp. 3–5; #59 at p. 5; #67-1).[4] Plaintiff has failed to provide sufficient allegations that Defendants violated § 1351.[5] *See Mohammed v. Sidecar Techs. Inc.*, 16 C 2538, 2016 WL 6647946, at *9 (N.D. Ill. Nov. 10, 2016). Plaintiff's objection is overruled.[6]

## CONCLUSION

Having considered Plaintiff's Objections (Dkt. #74), Defendants' Response (Dkt. #77), and having conducted a de novo review, the Court adopts the Magistrate Judge's report (Dkt. #70) as the findings and conclusions of the Court.

---

[4] Notably, Plaintiff also does not allege that he was unaware of his job duties prior to entering the United States and working for Defendant Ericsson; in fact, pursuant to the Amended Complaint, this was one of several Ericsson projects which required Plaintiff's travel to the United States (Dkt. #48 at pp. 2–3).

[5] Plaintiff continues to assert that he should be allowed the ability to conduct discovery to further develop his fraud in foreign contracting RICO claim. As the Report found, Plaintiff is not entitled to conduct discovery prior to pleading "the who, what, when, and where. . . *before access* to the discovery process is granted." *See Melby v. Am.'s MHT, Inc.*, 3:17-CV-155-L, 2017 WL 1365791, at *6 (N.D. Tex. Apr. 14, 2017) ("they must first satisfy Rule 9(b) before they will be allowed to conduct discovery.") (citing *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir. 1997)).

[6] Because Plaintiff has failed to state a claim for relief under RICO, the Court does not reach Plaintiff's argument that his RICO claims are duplicative of his FLSA claims.

It is, therefore, **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. #57) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

All relief not previously granted is **DENIED**.

The Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED**.

**SIGNED this 14th day of March, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE